# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT GALINDO GONZALEZ, | Case No. 1:14-cv-00173-SKO (PC) |
| Plaintiff, | ORDER FINDING CERTAIN CLAIMS COGNIZABLE and DISMISSING ALL OTHER CLAIMS AND DEFENDANTS |
| v. | |
| G. GIURBINO, et al., | (Doc. 14) |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Everett Galindo Gonzalez, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 3, 2014. On July 28, 2014, the Court dismissed Plaintiff's complaint, with leave to amend, for misjoinder of claims and parties. After obtaining several extensions of time, Plaintiff filed an amended complaint which is before the Court for screening. Plaintiff has consented to United States Magistrate Jurisdiction for all purposes. (*See* Docs. 7, 8.)

## II. LEGAL STANDARD

### A. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**III.     DISCUSSION**

    **A.     Summary of Allegations**

Plaintiff, who is currently incarcerated at Pelican Bay State Prison, brings this action against fourteen defendants for violating his rights at California State Prison-Corcoran ("CSP-Corcoran") in 2012 and 2013. Plaintiff's claims arise from his revalidation as a member of the Mexican Mafia ("EME") prison gang in 2012 and the conditions to which he was subjected while in the Security Housing Unit ("SHU") at CSP-Corcoran. Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments.

### 1. **Revalidation**

As of October 23, 2012, when Plaintiff had been in the SHU for thirteen years, Defendants Ortega and Pina conducted an inactive prison gang status review of Plaintiff's activities. Defendants disclosed the following five source items to Plaintiff, which they said were going to be used to revalidate him as a gang member:

(1) a November 17, 2009, confidential item/informant statement by Defendant Silveira stating that Plaintiff ordered an assault on an unknown inmate;

(2) an August 11, 2010, confidential memorandum stating Plaintiff was in good standing with the EME;

(3) an August 23, 2010, confidential memorandum stating Plaintiff was in good standing with the EME;

(4) a July 8, 2011, confidential memorandum by Defendant Jiminez stating Plaintiff was engaged in gang activity; and

(5) an April 3, 2012, CDCR 128 form by Defendant Ortega stating that he confiscated a drawing from Plaintiff's outgoing mail.

Defendants Ortega and Pina told Plaintiff they would return in twenty-four hours for his rebuttal. The next day, Plaintiff informed them that the source items were not timely disclosed to him, which prevented him from effectively rebutting them and that he was not timely informed that his mail had been confiscated. Plaintiff also inquired as to the whereabouts of the letter containing the drawing.

Plaintiff alleges that Defendants Pina and Ortega failed to thoroughly investigate the items, and that they were unreliable, as the Department Review Board ("DRB") later determined. Plaintiff alleges that Defendant Ortega mixed his drawing up with another drawing that was similar but did not contain gang signs and symbols. Defendant Ortega told Plaintiff he doubted he mixed up the drawing with another inmate's drawing but the letter had been destroyed.

Plaintiff alleges that the failure to notify him of the allegations in a timely fashion deprived him of his right to effectively rebut them; that Defendant Ortega's involvement as both the officer who confiscated his mail and the officer who disclosed the source items was prejudicial; and that

3

the failure to provide him with timely notice that his mail had been withheld and destroyed deprived him of his rights under the First and Fourteenth Amendments.

Plaintiff alleges that on November 28, 2012, Defendant Rosenkrans revalidated Plaintiff as an active Mexican Mafia ("EME") prison gang associate, without notice and a meaningful opportunity to be heard.[1]

On January 17, 2013, an Institutional Classification Committee ("ICC") hearing was conducted by Defendants Gibson, Banks-Graves, Pina, and Taber, but Plaintiff was not allowed to appear and present his side. Plaintiff was then sentenced to an indeterminate SHU term.

On March 22, 2013, Plaintiff appeared before ICC members Sexton, Banks-Graves, and Taber for a one-to-two minute hearing. Plaintiff requested that they review the five source items for reliability, and informed them that he had severe migraines and depression from extended stay at the SHU and his inability to practice his religion. Defendants told Plaintiff to debrief if he wanted better treatment. Plaintiff alleges that because Defendants Gibson, Banks-Graves, Pina, Taber, and Sexton signed the ICC chronos on January 17, 2013, and March 22, 2013, they were responsible for depriving him of his protected liberty interest in remaining free from the SHU without timely notice of the charges against him and a meaningful opportunity to be heard.

Plaintiff filed an inmate appeal and was interviewed at the first level of review by Defendant Garcia. Plaintiff told Defendant Garcia that he had not been informed that his mail had been confiscated and the drawing added to his file was not the one he sent his parents. Plaintiff explained that because he found out about the confiscated mail six to seven months after the fact, it took him several days to figure out what mail he had attempted to send that was confiscated. Defendant Garcia denied the appeal, which Plaintiff alleges violated his due process rights because Garcia was on notice of the underlying due process violations and failed to provide Plaintiff with notice and a meaningful opportunity to be heard. Plaintiff also alleges that by placing source items in his file, Defendants Silveira and Jimiez, like Defendant Graves-Banks, failed to provide him with notice and opportunity to be heard.

---

[1] Plaintiff alleges he was revalidated on November 28, 2014, but given the other relevant dates and the fact his complaint was filed on November 6, 2014, it appears Plaintiff meant 2012. (Comp., ¶47.)

4

## 2. Department Review Board ("DRB")

On September 12, 2013, Plaintiff appeared before the DRB -- Giurbino, Williams, Moreno, Diaz, and Ortega. Defendant Giurbino informed Plaintiff that he reviewed the five source items and he found all, but the drawing confiscated by Defendant Ortega, to be unreliable. Plaintiff told Defendant Giurbino that he had not been informed his mail was withheld until six to seven months after the fact. Defendant Giurbino questioned Defendant Ortega who stated the drawing had EME gang symbols and urged Plaintiff's retention in the SHU. Defendant Giurbino then told Plaintiff it did not matter that he did not receive timely notice that his mail and drawing had been confiscated, and he informed Plaintiff he would be placed in step two of the new step-down program unless he wished to debrief. Plaintiff was also informed he must sign off and cooperate or he would be retained in the SHU, have fewer privileges, and be sent to Pelican Bay State Prison.

Plaintiff repeated his objections and argued that although he sends a lot of art via mail, the drawing used against him was not one he sent his parents and he had a right to timely notice and an opportunity to be heard when his mail was confiscated. Plaintiff also objected to Defendant Ortega's presence at the hearing since he was the one who confiscated the drawing. Plaintiff alleges that the DRB should have released him to general population and that the drawing was the sole reason for retaining him at step two of the step-down program.

### B. Plaintiff's Claims

#### 1. Revalidation and Indeterminate SHU Term - Due Process Claim

Plaintiff alleges that he has been confined in the SHU for an "unconscionably long period of time," in violation of his due process rights to notice, a meaningful opportunity to be heard, and meaningful periodic review. Plaintiff's broad view that the Due Process Clause entitles him to notice and an opportunity to be heard at every step taken by prison officials mischaracterizes his rights under federal law.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). To state a claim, Plaintiff must first identify the interest at stake. *Id.* Liberty interests

5

may arise from the Due Process Clause or from state law. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, *id.* at 221-22 (citations and quotation marks omitted), and state-created liberty interests arise not from the mandatory language in prison regulations but from the nature of the condition of confinement, *id.* at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995)). Such "interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84 (citations omitted); *Wilkinson*, 545 U.S. at 221; *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff alleges that SHU conditions are harsh and that the solitary confinement caused him to deteriorate mentally and physically. In the SHU, Plaintiff is usually confined to a concrete cell twenty-four hours a day; the cell is illuminated; he is only allowed out of his cell every other day to exercise in a cage; he is not allowed phone calls, contact visits, religious services, vocational, recreational, or educational services; and he is deprived of adequate medical care. Long-term solitary confinement imposes atypical and significant hardship on inmates and, although the baseline for determining what length of confinement gives rise to a liberty interest remains unsettled, given the decade plus length of Plaintiff's SHU confinement, his allegations are sufficient at the pleading stage to demonstrate the existence of a protected liberty interest in remaining free from an indeterminate SHU term. *Wilkinson*, 545 U.S. at 223-24; *Brown*, 751 F.3d at 987-88.

Thus, the inquiry turns to what process is due. Despite Plaintiff's use of the term "charges," the assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. *Bruce*,

351 F.3d at 1287 (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472, 115 S.Ct. 2293 (1995)). In addition to these minimal protections, there must be "some evidence" bearing "some indicia of reliability" supporting the decision. *Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013) (citing *Superintendent v. Hill*, 472 U.S. 445, 456, 105 S.Ct. 2768 (1985) and *Bruce*, 351 F.3d at 1287) (internal quotation marks omitted).

Plaintiff is not entitled to notice and an opportunity to be heard at each and every step of the revalidation process nor is he entitled to notice and an opportunity to be heard every time a document is added to his central file. Plaintiff is instead entitled to notice and an opportunity to be heard prior to being revalidated, which is the action that led to the deprivation of his protected liberty interest in remaining free from the SHU. Plaintiff's allegations demonstrate that he was provided with notice of the source items being used to revalidate him twenty-four hours before he was provided with an opportunity to be heard.

It is less clear precisely what occurred next and whether it comported with procedural due process. *See Wilkinson*, 545 U.S. at 225-26 (discussing Ohio's multiple levels of review prior to "Supermax" placement); *Percelle v. Pearson*, No. C12-5353 THE, 2013 WL 6086918, at *4-5 (N.D.Cal. 2013) (notice of cell search and confiscated items, receipt of memorandum detailing evidence, and a hearing three days after initial segregation satisfied minimal due process requirements for gang classification and segregated housing assignment); *Ashker v. Brown*, No. C 09-5796 CW, 2013 WL 1435148, at *6-9 (N.D.Cal. 2013) (allegations that CDCR inmates do not receive multi-tiered review prior to SHU assignment, do not receive immediate review of the assignment decision within 30 days, and receive fewer opportunities to object to the initial reassignment than Ohio provided in *Wilkinson* are sufficient to state a claim for relief for denial of due process).

Due process requires that Plaintiff be provided with notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976). Plaintiff does not have a broader right to notice and the opportunity to be heard at every step of the process by every individual who sat in on a hearing or touched a

1 piece of paper relating to his revalidation, but he does have the right to be heard by a critical
2 decisiomaker.  *See Castro*, 712 F.3d at 1308 (due process required prison officials provide inmate
3 with opportunity to present his views to the critical decisionmaker); *Stewart v. Alameida*, 418
4 F.Supp.2d 1154, 1167 (N.D.Cal. 2006) (citing *Madrid v. Gomez*, 889 F.Supp. 1146, 1276
5 (N.D.Cal. 1995)) (no entitlement to present views to final reviewer who formally approved
6 inmate's validation, as that agent is not the critical decision maker in the gang validation process).

       According to Plaintiff, he was revalidated by Defendant Rosenkrans on November 28, 2012, and sentenced to an indeterminate SHU term by the ICC on January 17, 2013 -- without an opportunity to be heard.  Plaintiff appeared before the ICC on March 22, 2013, but the hearing lasted only minutes, the nature of the hearing is unclear, and Plaintiff had already been revalidated and sentenced to the SHU at that point.  At the pleading stage, Plaintiff's allegations are sufficient to permit him to proceed against Defendants Rosenkrans, Gibson, Banks-Graves, Pina, and Taber based on the decisions to revalidate him and assess an indeterminate SHU term without providing him with notice and an opportunity to be heard.

       Plaintiff also alleges that four of the five source items were unreliable, a determination also subsequently reached by the DRB, and he denies that the fifth item, a drawing, was his.  Plaintiff alleges that the drawing was mixed up with a similar drawing he sent to his parents without any gang symbols and that Defendant Ortega "doubted" he had mixed up the drawings, but that the letter allegedly containing the drawing had been destroyed.  (Comp., ¶41.)

       Federal courts cannot reexamine the record, reassess the credibility of the witnesses, and reweigh the evidence, and the inquiry is "whether there is *any* evidence in the record that could support the conclusion."  *Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013) (citing *Bruce*, 351 F.3d at 1287) (internal quotation marks omitted).  Even one item of evidence may constitute "some evidence" supporting gang revalidation, irrespective of Plaintiff's disagreement with its use, *Bruce*, 351 F.3d at 1287-88.  However, at the pleading stage, the Court must accept Plaintiff's factual allegations as true and view them in the light most favorable to him -- which is that four out of five source items were unreliable and the fifth item (a drawing with gang symbols) was not his.

8

## 2. **SHU Conditions – Eighth Amendment Claim**

The Eighth Amendment requires prison officials to take reasonable measures to guarantee inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Although the provision "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), it does require that prisons provide inmates with "basic human needs." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Eighth Amendment claims have two basic elements. The first is objective: the deprivation alleged must be sufficiently serious. *Farmer*, 511 U.S. at 832 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). The second is subjective: the prison official must possess a sufficiently culpable state of mind. *Id*. (citing *Wilson*, 501 U.S. at 298). To determine whether an alleged deprivation is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. *Id*. at 834 (citing *Wilson*, 501 U.S. at 298). With respect to the subjective component, the requisite state of mind depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." *See, e.g., Wilson*, 501 U.S. at 302-03; *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir.1994).

Plaintiff alleges that SHU conditions are harsh, and the solitary confinement caused him to deteriorate mentally and physically. Plaintiff alleges he is usually confined to a concrete call twenty-four hours a day; the cell is brightly illuminated from 5:00 a.m. to 11:00 p.m.; he is only allowed out of his cell every other day to exercise in a cage, but this schedule is regularly interrupted; he is not allowed phone calls, contact visits, or religious, vocational, recreational, or educational services; and he is deprived of adequate medical care.

Plaintiff's allegations that he has suffered from depression, migraines, and psychological problems from being subjected to these conditions for over a decade meets the objective prong. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996) (same).

9

Plaintiff also meets the subjective prong by stating that the DRB (comprised of Defendants Guirbino, Williams, Diaz, Adams, Moreno, and Ortega) brushed off his statements that being retained in the SHU under such restrictive conditions for so long has affected his mental health and caused him to suffer from depression and migraines. *See Helling*, 509 U.S. at 33 ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.").

Thus, Plaintiff states a cognizable claim under the Eight Amendment against Defendants Guirbino, Williams, Diaz, Adams, Moreno, and Ortega regarding the conditions of confinement that he has been subjected to in the SHU.

### 3. Confiscation of Outgoing Mail – First and Fourteenth Amendment Claims

Plaintiff alleges that the confiscation of his outgoing letter and drawing by Defendant Ortega without notice to him violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. Prisoners have "a First Amendment right to send and receive mail," *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam), and censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800 (1974); *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (per curiam). Prisoners also have a liberty interest in communicating by letter. *Krug v. Lutz*, 329 F.3d 692, 696-97 (9th Cir. 2003) (citing *Martinez*, 416 U.S. at 417-18).

At the pleading stage, Plaintiff's allegations are sufficient to allow him to proceed against Defendant Ortega for violation of the First Amendment and the Due Process Clause. *Barrett*, 544 F.3d at 1062; *Krug*, 329 F.3d at 696-97.

### 4. Exercise of Religion – First Amendment Claim

Plaintiff alleges that he has the right to freely exercise his religion. "[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by

10

institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400 (1997)).  Plaintiff has not alleged any specific facts supporting a claim that prison officials have substantially burden the practice of his religion. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987)).  Nor has Plaintiff linked any named defendant to any such conduct.  It is not enough for Plaintiff to complain about SHU generally and assert that included in such conditions is his inability to freely exercise his religion.

### IV.     CONCLUSION AND ORDER

Plaintiff has stated the following cognizable claims:  (1) against Defendants Rosenkrans, Gibson, Banks-Graves, Pina, and Taber for violation of the Due Process Clause based on the decisions to revalidate him and assess an indeterminate SHU term without providing him with notice and an opportunity to be heard; (2) against Defendants Guirbino, Williams, Diaz, Adams, Moreno, and Ortega regarding the conditions of confinement that he has been subjected to in the SHU in violation of the Eight Amendment; and (3) against Defendant Ortega for violation of the First Amendment and the Due Process Clause for confiscation of Plaintiff's outgoing mail.  The Court will, by separate order direct Plaintiff to submit USM 285 forms.  The Court finds that all other claims and Defendants should be dismissed based on Plaintiff's failure to state cognizable claims.

Accordingly, it is HEREBY ORDERED that:

1. this action shall proceed on Plaintiff's First Amended Complaint filed on November 6, 2014 on the following claims:

    (1) against Defendants T.L. Rosenkrans, C. Gibson, A. Banks-Graves, S. Pina, and J. Taber for violation of the Due Process Clause based on the decisions to revalidate him and assess an indeterminate SHU term without providing him with notice and an opportunity to be heard;

    (2) against Defendants G. Guirbino, L. Williams, J. Diaz, D. Adams, G. Moreno, Jr., and J. Ortega regarding the conditions of confinement he was subjected to

11

in the SHU in violation of the Eight Amendment; and

(3) against Defendant J. Ortega for violation of the First Amendment and the Due Process Clause for confiscation of Plaintiff's outgoing mail; and

2. all other claims and Defendants are dismissed with prejudice based on Plaintiff's failure to state any claims upon which relief may be granted.

IT IS SO ORDERED.

Dated: **April 20, 2016**                         **/s/ Sheila K. Oberto**
                                                  UNITED STATES MAGISTRATE JUDGE